UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| UNITED STATES OF AMERICA, | § | |
|---|---|---|
| Plaintiff, | § § § | |
| v. | § § | CIVIL ACTION NO. 3:16-CR-0375-B |
| CAROLYN FOSTER, | § § § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendant Carolyn Foster's Request for Hearing and Motion to Quash the Writ of Garnishment (Docs. 71 & 72), filed August 8, 2019. Foster requests a hearing pursuant to 28 U.S.C. § 3202(d). For the reasons discussed below, the Court **GRANTS** the motion to quash and to limit the garnishment to 25 percent of the periodic pension payments (Doc. 72). Therefore, the Court will not hold a hearing on the motion to quash and **DENIES** Defendant's request for a hearing (Doc. 71).[1]

---

[1] A hearing pursuant to 28 U.S.C. § 3202(d) is only held to address: (1) the probable validity of a claim of exemption; (2) the United States' compliance with any statutory requirement for the issuance of the writ of garnishment; or (3) certain matters regarding the enforcement of default judgments. *See* 28 U.S.C. § 3202(d). Foster does not claim any exemptions, *see* Doc. 71, Request for Hearing and/or Request to Transfer, and there is no default judgment here. The only basis for a hearing is (2), as the Government concedes it improperly omitted a portion of the writ of garnishment when it sent the writ to Foster. Doc. 73, Gov't's Obj. to Def.'s Mot., 7 n.4. However, as this Court grants the motion to quash, a hearing is not necessary.

- 1 -

# I.

## FACTUAL BACKGROUND

Foster pled guilty to federal program fraud, in violation of 18 U.S.C. § 666. Docs. 22, 28. On March 1, 2018, this Court ordered Foster to pay a special assessment of $100 and restitution of $600,000 to Grand Prairie Independent School District, as mandated by 18 U.S.C. § 3013 and the Mandatory Victim Restitution Act (MVRA), 18 U.S.C. §§ 3663A–3664. *See* Doc. 62, Judgment on Resentencing, ("Judgment"), 6–7.

Subsequently, the Government served writs of garnishment on garnishees JPMorgan Chase Bank, NA and Teacher Retirement System of Texas (TRS). Docs. 64–66. TRS has custody, control, or possession of a retirement account in Foster's name that has a monthly gross annuity of $4,905.65, from which it withholds $664.41 in federal income taxes. Doc. 67, TRS's Ans. to Appl. for Writ of Garnishment. JPMorgan Chase does not have any active accounts in Foster's name. Doc. 70, JPMorgan Chase's Ans. to Appl. for Writ of Garnishment.

Foster responded to the writs of garnishment by requesting a hearing and filing a motion to quash (Docs. 71–72). Foster is proceeding *pro se* in this matter, and her motion to quash is not clear on the specific grounds on which it rests. Foster's arguments appear to be that (1) the Government cannot garnish Foster's TRS annuity due to the separate criminal judgment ordering restitution; (2) the annuity does not fall under 18 U.S.C. § 3664(n), which the Government argues is an exception to the 25 percent limit on garnishment of earnings set out in 15 U.S.C. § 1673; (3) her financial situation has not changed since the criminal restitution judgment was entered; and (4) she needs the monthly pension in order to provide necessities for her family. Doc. 72, Def.'s Mot. to Quash ("Def.'s Br.").

As to the TRS annuity, the Government disputes these arguments and opposes the motion to quash. Doc. 73, Gov't's Obj. to Def.'s Mot. ("Gov.'s Obj."). Because JPMorgan does not currently hold any assets for Foster, the Government does not object to Foster's motion to quash as to the JPMorgan Chase garnishment. *Id.*

## II.

## LEGAL BACKGROUND

Under 18 U.S.C. § 3556, courts must "order restitution in accordance with section 3663A, and may order restitution in accordance with section 3663." Under 18 U.S.C. § 3771(a)(6), crime victims have "[t]he right to full and timely restitution as provided in law." The MVRA requires "that the defendant make restitution to the victim of the offense." 18 U.S.C. §3663A. In ordering restitution under MVRA, the court "direct[s] the probation officer to collect information regarding the victims and amount of loss, and the defendant's financial situation." *United States v. Roush*, 452 F. Supp. 2d 676, 678 (N.D. Tex. 2006). The court then determines the victims and amount of loss. *Id.*; § 3664(e), (f)(1)(A). The Government must demonstrate the amount of loss, and the defendant must "demonstrate financial resources and financial needs of dependents." *Roush,* 452 F. Supp. 2d at 678; §3664(e). The court then uses this information to "direct the defendant to make a single lump-sum payment, partial payments at specified intervals, in-kind payments, or a combination of payments at specified intervals and in-kind payments." *Roush*, 452 F. Supp. 2d at 678; § 3664 (f)(2).

To ensure defendants make restitution to their victims, the MVRA allows the Government to use "all other available and reasonable means" to collect court-ordered restitution. 18 U.S.C. § 3664(m). One of these available means is 18 U.S.C. 3664(n), which allows the Government to collect restitution from "substantial resources from any source, including inheritance, settlement, or

other judgment, during a period of incarceration."

## III.

## ANALYSIS

A.  *Does the installment payment schedule in the criminal judgment preclude the Government from immediately garnishing Foster's pension?*

The first issue is whether the Government can garnish any portion of the TRS annuity during Foster's incarceration.

Foster seemingly argues that the installment payment schedule in the criminal judgment, ordered by this Court under the procedures outlined in 18 U.S.C. § 3664, precludes the United States from immediately garnishing her pension in order to satisfy the restitution order. Doc. 72, Def.'s Br., ¶ 3.

Foster cites *United States v. Roush* for the proposition that if a district court includes a payment plan in a criminal judgment, the Government may not attempt to immediately collect the full amount of restitution. Doc. 72, Def.'s Br., ¶ 3. In *Roush*, the district court explained that "[p]ermitting the government to execute on the full amount of restitution at any time it chooses would plainly disrupt the balance set by the court when it established the payment schedule." 452 F. Supp. 2d at 681. The court interpreted its payment schedule as the exclusive method by which the Government could enforce the restitution obligation. *Id.*

This Court rejects Foster's argument, for two reasons. First, subsequent decisions in this circuit have seemed to limit *Roush* to its facts. In *United States v. Ekong*, the defendant argued that the Government could not require immediate restitution payments because the criminal judgment included an installment payment plan for restitution. 518 F.3d 285, 286 (5th Cir. 2007) (per curiam).

The Fifth Circuit rejected this argument, explaining how the MVRA "provides the Government authority to enforce victim restitution orders in the same manner that it recovers fines and by all other available means." *Id.* (quoting *United States v. Phillips*, 303 F.3d 548, 550–51 (5th Cir. 2002)). *Phillips* explains that this governmental authority comes from § 3664(m). 303 F.3d at 551. The criminal judgment did not specifically preclude the government from immediately seeking restitution through garnishment. *Id.; see also United States v. Urso*, 2009 WL 2999521 at *2 (N.D.Tex. Sept. 18, 2009) ("The court has reviewed the underlying criminal judgment in *Ekong* and finds that it is very similar to the judgment against Joseph Urso."). In other words, the Fifth Circuit held that installment payment plans bind only the defendant-debtor; the Government, however, can seek the restitution in any manner available to it. *See* 18 U.S.C. § 3664(m); 18 U.S.C. §3613(a).

Moreover, the Fifth Circuit in *United States v. Rand* again allowed the Government to seek immediate payments of restitution, despite there being an installment plan issued by the court. 924 F.3d 140, 143 (5th Cir. 2019) (per curiam). The court concluded that "[s]o long as the judgment contains nothing to the contrary, the government may pursue immediate payment or an adjustment of the payment schedule, as it did here." *Id.*

Second, the payment plan here is different than that found in *Roush*. Unlike *Roush*, where the restitution was not immediately payable, *see Roush*, 452 F. Supp. 2d at 678, here, the judgment states that the "[r]estitution shall be payable immediately and any unpaid balance shall be payable during incarceration." Doc. 62, Judgment, 5. Additionally, the judgment here explicitly states that the "payment plan shall not affect the ability of the United States to immediately collect payment in full through garnishment." *Id.* Such explicit permission is more than enough to allow the Government to seek immediate garnishment, regardless of a payment plan, under the authority

granted to it by § 3664(m). *See Ekong*, 518 F.3d at 286 (noting that immediate garnishment was allowed when there was "nothing in the criminal judgment to the contrary").[2]

Here, the judgment explicitly states that the restitution was payable immediately, and that the United States could seek immediate payment through garnishment. Doc. 62, Judgment, 5. It is *Ekong*, and not *Hughes*, that is applicable to this case. Therefore, the Court finds that the Government may under the MVRA seek immediate restitution payments.

B.   *Does Foster's Pension Plan Fall under 18 U.S.C. § 3664(n)?*

The next issue is whether the Government can garnish all of the TRS annuity payments.

As mentioned, the MVRA allows the Government to seek restitution by all "available and reasonable means." 18 U.S.C. § 3664(m). Generally, the maximum amount of earnings that is subject to of garnishment is 25 percent of disposable earnings. 15 U.S.C § 1673. Disposable earnings are those remaining after all legally required deductions, *see* 28 U.S.C. 3002(5), and include periodic payments to a pension program. *Id.* at § 3002(6). Both parties concede that the TRS payments here are earnings. Doc. 72, Def.'s Mot., ¶ 4; Doc. 73, Govt's Obj., 4. Without an exception, then, the Government would be limited to garnishing 25 percent of the periodic payments during Foster's incarceration.

---

[2]The Court's conclusion is not precluded by *United States v. Hughes*, 914 F.3d 947 (5th Cir. 2019). In *Hughes*, the Fifth Circuit prohibited the Government from seeking immediate garnishment when there was a payment plan in place. *Id.* at 949. The Court distinguished *Ekong*, and explained that in *Hughes*, the restitution judgment contained "no language directing that the full restitution was immediately due or owing." *Id.* at 949–50. The Court clarified that "[w]hen a restitution order specifies an installment plan, *unless there is language directing that the funds are immediately due*, the government cannot attempt to enforce the judgment beyond its plain terms absent a modification of the restitution order or default on the payment plan." *Id.* at 949 (emphasis added).

But, the Government argues that it may garnish all of Foster's pension payments under 18 U.S.C. § 3664(n). Under § 3664(n), "[i]f a person obligated to provide restitution . . . receives substantial resources from any source, including inheritance, settlement, or other judgment, during a period of incarceration, such person shall be required to apply the value of such resources to any restitution . . . still owed." The Government argues that the payments from the pension plan are "substantial resources from any source," § 3664(n), and therefore are an available means of garnishment under the MVRA. Doc. 73, Govt's Obj., 5. Foster, on the other hand, argues that because the pension payments are earnings, they do not fall under § 3664(n) and are thus subject to the 25 percent garnishment limitation. Doc. 72, Def.'s Mot., 1.

The issue, then, is whether periodic pension payments, which are "earnings," fall under § 3664(n) in these circumstances. The Court holds that periodic pension payments do not fall under § 3664(n), at least when the earnings are known to the Government at the time of sentencing. Garnishment of more than 25 percent of the periodic pension payments here is therefore not an available method of garnishment under the MVRA. 18 U.S.C. § 3664(m).

To be sure, some courts have found §3664(n) to cover "earnings," including periodic pension payments, because of the language of the statute. For example, in *United States v. Brewer*, the court noted how § 3664(n)'s "language explicitly demonstrates that any amount a defendant receives during a time of imprisonment can be levied by the United States to reduce that defendant's debt to the government." 2016 WL 6652996, at *3 (N.D. Tex. Oct. 21, 2016) (quoting *United States v. Cooper*, 2006 WL 3512936, at *3 (D. Kan. Nov. 1, 2006)); *see also United States v. Cunningham, et al.*, 866 F. Supp. 2d 1050, 1061–62 (S.D. Iowa 2012) (noting that the "plain language of §3664(n)

requires an incarcerated defendant to apply the value of substantial resources from *any source* towards restitution.") (emphasis in original).

Although the Government cites *Cunningham*, it makes no mention of several other courts which have held that periodic pension payments do not fall under §3664(n), or have questioned whether such payments do fall under the statute.[3]

In *United States v. McClanahan*, for example, the Southern District of West Virginia declined to apply §3664(n) to periodic pension payments. 2006 WL 1455698, at *4 (S.D. W. Va. May 24, 2006). The court there looked beyond the "broad language of the statute," and found "that the statute is directed towards preventing a defendant from benefitting from the receipt of a lump sum, rather than a periodic payment from a pension." *Id*. The *McClanahan* court partially based its conclusion on the observation that periodic payment plans are different than the "inheritance[s], settlement[s], or judgment[s]" that are specifically mentioned in the statute. *Id.*

Courts in this district, and the Fifth Circuit itself, also contemplate § 3664(n) applying only to unexpected outside financial sources received during incarceration. In *United States v. Scales*, the Fifth Circuit did explain that §3664(n) "explicitly provides" for amounts falling under the provision

---

[3]The Government cites to *United States v. Key*, 2013 WL 2322470 (N.D. Tex. May 28, 2013), for the proposition that "[t]he typical garnishment limit of 25% that applies to earnings does not create a bar to garnishment in excess of that percentage under" § 3664(n). Doc. 73, Gov't's Obj., 5. The Government explains that in *Key*, the district court determined that $611.75 in monthly disposable earnings was not substantial under § 3664 (n) in that context, implying that in other situations, the court would have found the earnings subject to §3664 (n). *Id.* However, the Court disagrees with this interpretation of *Key*. In *Key*, the district court acknowledged that very few district courts in the Fifth Circuit have confronted § 3664(n). 2013 WL 2322470, at *2. The court merely "assum[ed], *without deciding*, that section 3664(n) applies to wages or disposable earnings and trump's section 1673(a)'s" 25% limit. *Id*. (emphasis added). Even if the court did decide that § 3664(n) trumped § 1673, it found that the wages in issue were not substantial and therefore would not be covered by § 3664(n), even if wages and earnings could be covered by the statute in other situations. *Id*.

to be used towards restitution. 639 F. App'x 233, 239 (5th Cir. 2016) (per curiam). However, this "explicit" language was qualified, as the court was using § 3664 (n) as support for its conclusion that "it is not plain error for a court, in a sentencing order, to leave open the possibility that it might require an additional payment near the end of supervised release *if unexpected funds are suddenly available*." *Id.* (emphasis added). In *Hughes*, the Fifth Circuit expanded on this interpretation by explaining that "this provision refers to windfalls or sudden financial injections." 914 F.3d at 951. The Court there used the three examples listed in § 3664(n)—"inheritance, settlement, or other judgment"—to limit the applicability of the broad language of the statute. *Id.* Additionally, in *Roush*, Judge Godbey explained how under § 3664(n), "a defendant's receipt of a *windfall* during imprisonment triggers an automatic payment requirement." *Roush*, 452 F. Supp. 2d at 679 (emphasis added).

This Court must apply the Fifth Circuit's interpretation of § 3664(n). Here, the periodic pension payments are not an unexpected financial source or windfall for Foster. As the Government itself notes, the pension account was known and disclosed at sentencing. Doc. 73, Gov't's Obj., 6–7. Allowing the Government to wait until defendants are incarcerated to seek garnishment under 18 U.S.C. § 3664(n) when it knows about the financial resource beforehand would be a complete end-run around the limitation Congress enacted, and would make the exceptions to the limitation superfluous. *See United States v. Solis-Campozano,* 312 F.3d 164, 166 (5th Cir. 2002) ("[P]lain meaning controls, unless it leads to an absurd result."); *see also Hohn v. United States*, 524 U.S. 236, 249 (1998) ("We are reluctant to adopt a construction making another statutory provision superfluous.").

The Government pushes back on such an interpretation by arguing that it is not required to show a change in circumstances affecting a defendant's ability to pay restitution under 18 U.S.C. § 3664(n). Doc. 73, Gov't's Obj., 6. However, whether there is such a requirement is irrelevant for present purposes, as the issue here is whether § 3664(n) can even be used at any point, regardless of financial circumstance, to garnish Foster's pension payments. As explained, because the Government knew about the pension account at the time of sentencing, the payments are not the type of unexpected financial gain or windfall contemplated by § 3664 (n). Thus, § 3664(n) does not give the Government authority to garnish 100 percent of Foster's pension payments.

## IV.

## CONCLUSION

For the foregoing reasons, the Court holds that, at least when the periodic pension payments were known at the time of sentencing, such payments do not fall under 18 U.S.C. § 3664(n) and are subject to the garnishment limitations set out in 15 U.S.C. § 1673. As explained, the Government may immediately garnish 25 percent of the periodic pension payments. Insofar as the motion asks the Court to limit the garnishment to 25 percent of the periodic pension payments, the motion (Doc. 72) is hereby **GRANTED**. The Court will not address the parties' other arguments, such as whether the pension payments are "substantial" under § 3664(n), as those issues are now moot. Finally, the Court **DENIES** Foster's request for a hearing (Doc. 71).

SO ORDERED.

SIGNED: September 12, 2019.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE